# First Baptist Church of Erie *versus* Caughey *et al.,* Administrators.

1. A religious society is not bound by the actions of its trustees beyond the express powers granted, but where they incur a liability to pay a debt for the reconstruction of the meeting-house of the society, such action is among their implied powers and the society is bound.
2. Trustees of a religious society gave their note to pay a debt incurred in rebuilding their meeting-house: *Held,* that while such authority was not granted to them, yet being incurred for a necessary and legitimate object, there was an implied power to borrow the money, and the society was liable in an action for money had and received. *Held, further,* that the note was properly admitted in evidence.

October 16th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Erie county:* Of October and November Term 1877, No. 145.

Assumpsit by S. S. Caughey and H. B. Fleming, administrators of Joseph Neeley, deceased, to recover the amount unpaid, with interest, on the following note:—

"$900.                              ERIE, Dec. 24th 1867.

" On the 1st day February 1869, we promise to pay, to the order of Joseph Neeley, nine hundred dollars; it being for use of First Baptist Church. Value received.

W. J. F. LIDDELL,
HORACE L. WHITE,
JAMES D. ROSS,
SAMUEL Z. SMITH.
Trustees of the First Baptist Church, Erie, Penna."

[First Baptist Church of Erie *v.* Caughey.]

The remaining facts are sufficiently stated in the opinion of this court.

The defendants resisted the claim on the ground, first, that under the charter of the church the trustees had no authority to execute such an obligation as the one in suit, nor to borrow money; and, secondly, that the money was for the payment of a note previously given by W. J. F. Liddell, one of the trustees, to one Catharine Smith, for money borrowed from her by him individually, and with which he paid a subscription he had made towards the building-fund of the church.

On part of the plaintiff it was contended that, whether the trustees had the right to bind the church by such an obligation, or not, yet, if the money obtained from Mr. Neeley by the trustees was actually used in the construction of the church edifice, the church receiving the benefit of the same, there would be an implied obligation to pay, and plaintiff should be entitled to recover under the general indebitatus assumpsit counts in their declaration.

The court, Galbraith, P. J., in the general charge said:—

"This I conceive to be a correct position. The trustees of a corporation may not bind it by such specialty containing such stipulations as these, in the absence of some express authority contained in the charter; but there are implied as well as express powers incident to every corporation; and in this case, if the jury believe from the evidence that the money for which the note was executed by the trustees was used by them, or by other officers of the church, in rebuilding the church building, and so went to the benefit of the society, then the law raises an implied obligation in equity and good conscience, as well as in law, on part of the church to repay it, and the verdict should be for plaintiff. If, on the contrary, the jury believe from the evidence that the money went to pay a debt of W. J. F. Liddell, one of the trustees who signed the note, the fact that the money for which the debt of Liddell was contracted was paid into the church treasury on a subscription made by him individually towards the building-fund, would not relieve the transaction or change its character, and plaintiff could not recover. The jury will decide as they find the weight of evidence upon this fact, and give their verdict accordingly."

The verdict was for the plaintiff, and after judgment the defendant took this writ, assigning for error the admission of the note in evidence and the foregoing charge of the court.

*Allen & Rosenzweig* for plaintiff in error.—The powers of a corporation must be found in its charter or arise by necessary implication: Pittsburgh and Steubenville Railroad Co. *v.* Allegheny County, 29 P. F. Smith 210. The words "by necessary implication," mean, of course, such powers as are necessary to carry

into effect the express powers given by the charter, or such powers as are necessarily connected with the legitimate business of the corporation acting within the scope of its authority. The power of the trustees of a church organization to borrow money, if such power exists, must be found in its charter and cannot arise by implication. The powers exercised by trustees must be expressly granted. Miller v. Church, 4 Phila. 48; Beach v. Fulton Bank, 3 Wend. 573; People v. Utica Insurance Co., 15 Johns. 358. Hence the note being void, it should not have been received in evidence.

*James C. & F. F. Marshall*, for defendants in error.—There are implied as well as express powers incident to every corporation, and in this case, if the jury believe from the evidence that the money for which the note was given by the trustees was used by them or other officers of the church in rebuilding the church building, and so went to the benefit of the society, then the law raises an implied obligation on the part of the church to pay it, and the verdict should be for the plaintiffs. The facts were fairly left to the jury. They found that the money for which the suit was brought was used by the church in repairing and erecting the church building.

A corporation is liable for the contracts of its officers, even when not expressly authorized, when such contracts were entered into publicly and in such manner as to be with the knowledge of the corporators: Allegheny City v. McClurkan, 2 Harris 81. The note was properly admitted in evidence: Hoskinson et al. v. Eliot et al., 12 P. F. Smith 393.

Mr. Justice MERCER delivered the opinion of the court, January 7th 1878.

All the assignments of error may be answered in the consideration of two questions. The one whether the corporation had the power to incur the alleged liability; the other whether there was sufficient evidence to submit to a jury that the liability was actually incurred.

1. The original charter declares one of the objects of the association to be "the building of a meeting-house," and settlement and support of a pastor or minister of the gospel for the worship of Almighty God, and the religious instruction of the congregation * * *. together with that of the purchase and tenure of such lands or lots as may be necessary and convenient for the site of a meeting-house, of a burial-ground, and of a parsonage house of convenient size for their minister." A supplement to the charter gives the corporation power to assess and collect a tax on the pews; but not to exceed in any one year twenty per centum upon a fixed valuation, for the purpose of defraying the expenses of repairs, insurance and minis-

4 NORRIS—18

[First Baptist Church of Erie v. Caughey.]

ter's salary, together with incidental expenses. The charter is silent on the subject of borrowing money.

Some thirty years after the corporation was formed, the church edifice became unsuitable and inadequate for the enlarged congregation. It therefore resolved to rebuild and enlarge the meeting-house. This required an expenditure beyond the sum subscribed by voluntary contributions, for that purpose. The meeting-house was rebuilt. Had the corporation power to contract a debt in rebuilding beyond the amount subscribed? We think it had. The object of its incorporation could not be fulfilled without the meeting-house. No clause in its charter forbid its contracting a debt in the erection of its necessary buildings. Whether it hired laborers and bought materials on a credit, or whether it borrowed money with which to pay for the labor and materials when procured, the liability incurred was for the same purpose. As it could not have successfully defended against the wages of a laborer employed in the erection of the house through want of power to employ him, so it cannot defend against the payment of money borrowed and actually expended in the erection of the church. As to the policy of a church erecting a house of worship far beyond its available means, we do not now feel it necessary to indicate an opinion. Certain it is, that the small sum here in controversy, is trifling compared with the large debts resting upon many of the churches in towns and in cities.

2. The charter declared the business and affairs of the association should be under the direction and management of five trustees, a majority of whom should constitute a quorum. It further declared the trustees should " have the general care, superintendence, and management of the concerns of the same."

During the progress of the work, Mr. Liddell, one of the trustees, appears to have been the financial agent and manager, in behalf of the board of trustees. In raising the funds necessary, he borrowed $1200 from Mrs. Smith, and gave his individual note therefor. Subsequently the trustees borrowed $900 of Joseph Neeley, to pay so much of the debt due to Mrs. Smith, and four of them executed and delivered the note for the sum thus borrowed. The court doubted the power of the plaintiff in error to give the note, and the consequent liability of the corporation thereon alone; but substantially charged that there were certain implied powers incident to every corporation, and if they were satisfied, from the evidence, that the money, for which the note was given, was actually used in rebuilding the church, and thus went to the benefit of the society, the law raised an implied obligation on the part of the church to repay it. It was contended on the argument that there was no evidence that the money was used in rebuilding the church. The answer to this objection is shown in several parts of the record. The note itself contains the written declaration of four of the trustees

[First Baptist Church of Erie *v.* Caughey.]

jointly, when engaged in making the loan, that the $900 were "for use of First Baptist Church." The settlement which Liddell subsequently made, as appears by the receipt signed by the president of the board of trustees, and one other trustee, declares, " we hereby assume all liabilities of said church for which said W. J. F. Liddell, as trustee, has become responsible, including note given to Mrs. Catharine Smith, signed by himself individually, for the use of said church, according to settlement made this day." On the trial of the cause, James Dunlap, president of the board of trustees, was called, by defendants in error, as a witness, and in his testimony in chief said, " in repairing church had to borrow money ; were advised by counsel that church could not borrow it ; must be individual ; the money borrowed from Neeley was paid to Mrs. Catharine Smith, to discharge a debt to her for money borrowed by Mr. Liddell for the church." It is true, on cross-examination, his evidence goes to impair the validity of the receipt to which his name was subscribed, and he further said " none of the Neeley money was received by the church." I think the fair interpretation of his testimony is that the money was not actually paid into the hands of the trustees, but was paid directly by Neeley to Mrs. Smith. It was, however, a question for the jury to determine. It is further shown by the evidence that the plaintiff in error made a payment of $300 on the note given to Neeley ; the endorsement thereof being in the handwriting of the treasurer, now deceased, of the corporation.

This chain of evidence, both written and verbal, tending to show how the business was conducted and settled, ratified by a partial payment, was certainly sufficient to submit to the jury to find that the money was used in rebuilding the church.

Judgment affirmed.